IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GOLDEN STAR WHOLESALE, INC.,

      Plaintiff,

V.

ZB IMPORTING, INC. and
RANI REFRESHMENTS FZCO,

      Defendants.      /

Civil Action No. 4:19-cv-10958
Hon. Stephanie Dawkins Davis

Magistrate Judge Anthony P. Patti

WARNER NORCROSS + JUDD LLP
By: Brian D. Wassom (P60381)
45000 River Ridge, Suite 300
Clinton Twp., MI 48038
(248) 784-5039
bwassom@wnj.com

GIARMARCO, MULLINS & HORTON, P.C.
By: James Y. Rayis (P34795)
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan 48084
(248) 457-7173
jrayis@gmhlaw.com

*Attorneys for Plaintiff*

BROOKS WILKINS SHARKEY & TURCO LLC
By: Daniel N. Sharkey (P53837)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
248-971-1712
sharkey@bwst-law.com

MICHAEL BEST & FRIEDRICH LLP
By: Marshall J. Schmitt
444 West Lake Street, Suite 3200
Chicago, IL 60606
312-596-5828
mjschmitt@michaelbest.com

*Attorneys for Defendants*

---

**PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS
AND FOR JUDGMENT ON THE PLEADINGS,
<u>WITH SUPPORTING BRIEF</u>**

Plaintiff Golden Star Wholesale, Inc. respectfully moves pursuant to Fed. R. Civ. P.

12(b)(6) for this Court to dismiss Defendant Rani's Amended Counterclaims with prejudice,

and pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings in Golden Star's favor on the Complaint as to both Defendants, declaring that (1) Rani does not own protectable trade dress or copyright interests in the RANI can designs; (2) the copyright registrations relied upon by Rani are invalid; (3) the ALREEF design does not infringe any such rights that may exist; and (4) Golden Star has not interfered in any distribution rights that either Defendant may have in the RANI juice products. On April 29, 2020, the undersigned sought consent in this motion pursuant to LR 7.1, and consent was not obtained. In support, Golden Star offers the following Brief.

## STATEMENT OF ISSUES PRESENTED

1.      Does Count I of the Counterclaims fail to plausibly state a cause of action because it fails to plausibly plead:

a.      that Rani's subject juice can design has sufficient secondary meaning creating a distinct commercial impression that separates it from the crowded marketplace of highly similar can designs and establishes trade dress rights, or

b.      that Golden Star's design is likely to cause confusion with such rights even if they existed?

2.      Does Count II of the Counterclaims fail to plausibly state a claim for copyright infringement, because:

a.      it fails to plausibly allege that Rani's subject juice can design contains any original expression, and

b.      even if the design contains some original expression, Rani fails to plausibly allege that Golden Star copied any original, copyrightable portion of that design, and

c.      any allegedly copied expression is barred from copyright protection by the merger and *scenes a faire* doctrines?

3.      Does Count III of the Counterclaims fail to plausibly state a cause of action under the Michigan Consumer Protection Act because:

a.      it merely duplicates Rani's Lanham Act argument, and

      b.      Golden Star is a "regulated business" and thus not subject to suit under the Act, and

      c.      Rani, as a business competitor rather than a consumer, lacks standing under the Act?

4.      Does Count IV of the Counterclaims fail to plausibly state a tortious interference claim because Rani:

      a.      fails to identify a "breach or termination" of a business expectancy, and

      b.      fails to plead that Golden Star acted with an improper purpose?

5.      Because Rani fails to plausibly allege any actionable trade dress or copyright interests or "distribution rights" against Golden Star, should the Court grant Golden Star the declaratory judgment it seeks that Defendants have no such rights and that Golden Star has not infringed them?

## <u>MOST RELEVANT AUTHORITY</u>

- The governing standards of review, which are dispositive to Golden Star's motion to dismiss, are established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and Fed. R. Civ. P. 12(b)(6).

- The application of this legal standard to analogous facts in a Lanham Act case is best exemplified by *Hensley Mfg. v. ProPride, Inc.*, 579 F. 3d 603 (6th Cir. 2009).

- The deficiencies of Rani's copyright claims are best explained by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004).

- Regarding Rani's MCPA claim, *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28, 38 (Mich. 1999) explains the regulated business exemption, and *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011) discusses standing.

- *Knight Capital Partners v. Henkel AG & Co.*, 930 F. 3d 775, 785 (6th Cir. 2019) summarizes the deficiencies in Rani's tortious interference claim.

- Fed. R. Civ. P. 12(c) and *Lowden v. County of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) address motions for judgment on the pleadings.

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ............................................................................iii

MOST RELEVANT AUTHORITY ..................................................................................... v

TABLE OF CONTENTS.................................................................................................. vi

TABLE OF AUTHORITIES ............................................................................................. vi

INTRODUCTION ............................................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 2

   A.  Motion to Dismiss under Rule 12(b)(6) ............................................................ 2

   B.  Motion for Judgment on the Pleadings Under Rule 12(c)................................... 3

ARGUMENT .................................................................................................................. 4

   A.  Rani Fails to Plausibly Allege the Existence or Infringement of Trade Dress ............ 4

     1.  Rani Must Plausibly Allege That Its Trade Dress Has Secondary Meaning, and That Golden Star is Likely to Cause Confusion With That Trade Dress.......................... 4

       a.  Trade Dress Rights Require Secondary Meaning ............................... 5

       b.  The Multi-Factor Test for Likelihood of Confusion ............................. 6

     2.  Rani's Formulaic Assertions of Secondary Meaning and Likelihood of Confusion Lack Any Plausible Factual Basis, and Therefore Do Not Plausibly Support Its Allegation of Liability Under 15 U.S.C. § 1125(a) ....................................................................7

   B.  Rani Fails to State a Claim for Copyright Infringement ............................................ 12

     1.  Rani's Can Design Is Not Original........................................................................... 12

     2.  Rani Cannot Show Golden Star Copied Protectable Elements of Its Design ....... 14

     3.  Rani's Claim Runs Afoul of the Merger and Scenes a Faire Doctrines................. 15

   C.  Rani Fails to State a Claim Under the Michigan Consumer Protection Act ............. 16

     1.  Golden Star Falls Within the Statute's "Regulated Business" Exemption ............. 17

     2.  As a Competitor, Rani Lacks Standing Under the MCPA.................................... 19

   D.  Rani Fails to Plausibly Articulate or Plead a Tortious Interference Claim................. 19

   E.  Rani's Own Pleadings Validate Golden Star's Request for a Declaration That It Has Not Infringed Defendants' Rights ...................................................................................... 22

     1.  Golden Star Is Not Infringing Any IP Rights ......................................................... 22

     2.  Golden Star Is Not Interfering in Any "Distribution Rights" .................................. 23

CONCLUSION................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
    280 F.3d 619 (6th Cir. 2002) ................................................................. 5, 7

*AJB Enters., LLC v. Backjoy Orthotics, LLC,*
    No. 3:16-cv-00758, 2016 U.S. Dist. LEXIS 174630, 2016 WL 7341702 (D.
    Conn., Dec. 18, 2016) ................................................................................. 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 2, 3, 7, 12

*Automated Solutions Corp. v. Paragon Data Systems,*
    756 F.3d 504 ................................................................................................. 15

*Estate of Barney v. PNC Bank, Nat'l Ass'n,*
    714 F.3d 920 (6th Cir. 2013) ...................................................................... 2, 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 2, 3

*Bubble Genius LLC v. Smith,*
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ......................................................... 11

*Carson Optical, Inc. v. Prym Consumer USA, Inc.,*
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ........................................................... 12

*CMI Int'l, Inc v Intermet Int'l Corp,*
    251 Mich App 125 (2002) ............................................................................ 20

*CTI Servs. LLC v. Haremza,*
    797 F. Supp. 2d 1257 (N.D. Okla. 2011) .................................................... 19

*Dalley v Dykema Gossett, PLLC,*
    287 Mich App 296 (2010) ............................................................................ 21

*Diamond Foods, Inc. v. Hottrix, LLC,*
    No. 14-cv-03162-BLF, 2016 U.S. Dist. LEXIS 93247 (N.D. Cal. July 18,
    2016).............................................................................................................. 15

*Domo, Inc. v. Grow, Inc.,*
No. 2:17-cv-812, 2018 U.S. Dist. LEXIS 79756 (D. Utah May 9, 2018) ................... 10, 11

*Dow Corning Corp. v. Jie Xiao,*
No. 11-10008-BC, 2011 U.S. Dist. LEXIS 54619 (E.D. Mich. May 20, 2011) ........................................................................................................................ 11

*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC,*
No. 14-cv-3685, 2015 U.S. Dist. LEXIS 89415, 2015 WL 4162757 (E.D.N.Y., July 8, 2015) ........................................................................................... 11

*Feldman v. Green,*
138 Mich App 360 (1984) ....................................................................................... 21

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,*
670 F.2d 642 (6th Cir. 1982) .................................................................................... 6

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.,*
730 F.3d 494 (6th Cir. 2013) .................................................................................... 6

*Health Call of Detroit v. Atrium Home & Health Care Services, Inc.,*
706 NW 2d 843 (Mich. Ct. App. 2005) .................................................................. 19

*Hensley Mfg. v. ProPride, Inc.,*
579 F. 3d 603 (6th Cir. 2009) ............................................................................. *passim*

*Holiday Inns, Inc. v. 800 Reservation, Inc.,*
86 F.3d 619 (6th Cir. 1996) ...................................................................................... 5

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.,*
931 F.2d 1100 (6th Cir. 1991) ................................................................................. 7

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
456 U.S. 844 (1982) ................................................................................................. 6

*JPMorgan Chase Bank, NA v. Winget,*
510 F. 3d 577 (6th Cir. 2007) ................................................................................... 4

*Kim Seng Co. v. J&A Imps., Inc.,*
810 F. Supp. 2d 1046 (C.D. Cal. 2011) ................................................................ 16

*Knight Capital Partners v. Henkel AG & Co.,*
930 F. 3d 775 (6th Cir. 2019) ................................................................................ 20

*Knight Enterprises, Inc v RPF Oil Co,*
     299 Mich App 275 (2013) ................................................................... 21

*Kohus v. Mariol,*
     328 F. 3d 848 (6th Cir. 2003) ....................................................... 14, 15

*Leapers, Inc. v. SMTS, LLC,*
     879 F. 3d 731 (6th Cir. 2018) ........................................................... 5, 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
     387 F.3d 522 (6th Cir. 2004) ...................................................... 12, 13, 15

*Lowden v. County of Clare,*
     709 F. Supp. 2d 540, 546 E.D. Mich. (2010) ................................... 22

*Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.,*
     528 F. 3d 1258 (10th Cir. 2008) (Gorsuch, J.) ............................... 13

*Mixon v. Ohio,*
     193 F.3d 389 (6th Cir.1999) ............................................................... 4

*Newsboys v. Warner Bros. Records,*
     No. 3:12-cv-0678, 2013 U.S. Dist. LEXIS 97695 (M.D. Tenn. July 10,
     2013) .................................................................................................. 11

*Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC,*
     184 F. Supp. 3d 572 (W.D. Ky. 2016) .............................................. 11

*OHC Grp. LLC v. BLIP, LLC,*
     No. CV 09-5804 PA, 2010 U.S. Dist. LEXIS 149874 (C.D. Cal. June 7,
     2010) .................................................................................................. 16

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.,*
     175 F.Supp.2d 542 (S.D.N.Y. 2001) ................................................. 15

*Peter v. Stryker Orthopaedics, Inc.,*
     581 F. Supp. 2d 813 (E.D. Mich. 2008) ........................................... 17

*Progressive Distribution v. UPS, Inc.,*
     856 F. 3d 416 (6th Cir. 2017) ............................................................. 5

*Prysak v R L Polk Co,*
     193 Mich App 1 (1992) ..................................................................... 20

ix

*Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,*
  477 F.3d 383 (6th Cir.2007) ........................................................................... 3

*Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  479 F.2d 478 (6th Cir.1973) ........................................................................... 3

*Southgate v. Soundspark, Inc.,*
  No. 14-CV-13861-ADB, 2016 WL 1268253 (D. Mass. Mar. 31, 2016) ........................... 12

*Stromback v. New Line Cinema,*
  384 F. 3d 283 (6th Cir. 2004) ......................................................................... 15

*United States ex rel. Tenn. Valley Auth. v. Bagwell,*
  698 F. Supp. 135 (M.D. Tenn. 1988) ................................................................. 22

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
  532 U.S. 23 (2001) ....................................................................................... 6

*Trepel v Pontiac Osteopathic Hosp,*
  135 Mich App 361 (1984) ............................................................................... 21

**Statutes**

15 U.S.C. § 1114 ............................................................................................ 5

15 U.S.C. § 1125(a) ........................................................................... 4, 5, 7, 12

17 U.S.C. § 102 ........................................................................................... 12

Lanham Act ................................................................................................. 4

MCL § 289.1101 .......................................................................................... 18

MCL § 445.904(1)(a) ..................................................................................... 17

Michigan Consumer Protection Act ......................................................... 16, 17, 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2, 3, 8

Fed. R. Civ. P. 12(c) ............................................................................. 3, 4, 22

## **INTRODUCTION**

Rani's long-awaited response to Golden Star's Complaint has finally demonstrated that it has no defense to Golden Star's straightforward request for declaratory judgment. When Golden Star pointed this out by means of its original motion to dismiss the counterclaims and for judgment on the pleadings (DE 32), Rani did not bother attempting to defend its pleading (DE 28), but amended it instead (DE 34). Tellingly, however, the amendments merely amplify the immaterial portions of Rani's original counterclaims, and remain deafeningly silent as to the substance of Golden Star's motion. Rani has now received all the bites at the apple to which it is entitled, and still cannot prove its claims. The Court should now dismiss Rani's counterclaims with prejudice, and grant Golden Star judgment as a matter of law as to both Defendants.

Golden Star is doing absolutely nothing wrong. Defendants are merely galled at having another well-known competitor in the marketplace, and thus resorted to unsubstantiated intellectual property claims to undermine Golden Star. Specifically, Defendants instigated this dispute by sending demand letters threatening to sue Golden Star on the basis that the external design of Golden Star's ALREEF juice cans allegedly infringed Rani's supposed trade dress and copyright interests in its RANI juice cans (and interfered in ZB's "distribution rights," a meaningless term that Defendants have finally admitted is entirely derivative of Rani's alleged intellectual property rights). Golden Star sought this Court's declaration that Defendants had no such rights and that Golden Star was not violating any that did exist.

Now—after a year-long and extraordinarily expensive goose chase in order to serve Rani in Dubai because of Rani's refusal to accept service, and wasted legal expenses responding to ZB's "borderline frivolous" motion to dismiss (DE 19, PgID 123)—it turns out that Golden Star was right, as a matter of law. Having finally been forced by the compulsory counterclaim rule to assert or lose its legal claims against Golden Star as to the subject matter at issue, Rani has failed to plausibly assert infringement of any trade dress, copyright, or "distribution" rights, or any other claim against Golden Star.

Defendants' charade has gone on long enough. The Court should put an end to it by dismissing the counterclaims with prejudice and granting Golden Star judgment against both Defendants as a matter of law.

## STANDARD OF REVIEW

### A.   Motion to Dismiss under Rule 12(b)(6)

Under the heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). While the "plausibility standard is not akin to a 'probability requirement,' ... it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Put differently, if the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 555 (quotation and citation omitted).

This standard of review applies to all causes of action, including, *inter alia*, allegations of trademark infringement. *See Hensley Mfg. v. ProPride, Inc.*, 579 F. 3d 603, 610-13 (6th Cir. 2009) (dismissing trademark infringement claims where plaintiff's allegations failed to plausibly allege a likelihood of confusion).

## B.    Motion for Judgment on the Pleadings Under Rule 12(c)

This Court evaluates a judgment on the pleadings pursuant to Rule 12(c) using the same standard as applies to a review of a motion to dismiss under Rule 12(b)(6). *See Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 389 (6th Cir.2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973). But the Court

"need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, NA v. Winget*, 510 F. 3d 577, 582 (6th Cir. 2007) (quotation omitted).

## ARGUMENT

**A.**   **Rani Fails to Plausibly Allege the Existence or Infringement of Trade Dress**

Count I of Rani's counterclaims alleges "unfair competition in violation of 15 U.S.C. §1125(a)." DE 34, ¶34, PgID 225. The factual allegations on which this claim rests fail to plausibly support this allegation.

### 1.   **Rani Must Plausibly Allege That Its Trade Dress Has Secondary Meaning, and That Golden Star is Likely to Cause Confusion With That Trade Dress**

The provision Rani cites is Section 43(a) of the Lanham Act, the federal trademark statute. It provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. [15 U.S.C § 1125(a)]

Rani chooses to label its cause of action based on this statute "unfair competition," DE 34, ¶34, PgID 225, but supports it exclusively with factual allegations pertaining to trade dress.

*See* DE 34, ¶¶7-33, PgID218-224. The statute itself does not expressly use either term, and both labels describe the same cause of action. Regardless of the label given to it, the touchstone of liability in a claim brought under this statute remains the same: likelihood of confusion[1] with a mark in which the plaintiff has established secondary meaning.

### a.   *Trade Dress Rights Require Secondary Meaning*

"'Trade dress' refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sales. Trade dress involves the total image of a product and may include features such as size, shape, color, or color combinations, texture, graphics, or even particular sales techniques." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 280 F.3d 619, 629 (6th Cir. 2002) (internal citations and punctuation omitted). "In order to prevail on a claim for trade dress infringement ..., a plaintiff must show that its design is (1) nonfunctional, (2) has acquired a secondary meaning, and (3) is confusingly similar to the

---

[1] *See Leapers, Inc. v. SMTS, LLC*, 879 F. 3d 731, 740 (6th Cir. 2018) ("The Lanham Act, 15 U.S.C § 1125(a), creates a civil cause of action for trade dress infringement"); *Progressive Distribution v. UPS, Inc*., 856 F. 3d 416, 424 (6th Cir. 2017) ("Progressive alleges a claim of trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125 of the Lanham Act. To prevail upon [either] claim, Progressive must establish that UPS's trademark creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties; *Holiday Inns, Inc. v. 800 Reservation, Inc*., 86 F.3d 619, 622-23 (6th Cir. 1996) (explaining that a party seeking to avoid summary judgment in a case alleging trademark infringement and unfair competition, in violation of 15 U.S.C. §§ 1114 and 1125(a), "must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement").

allegedly infringing design." *Leapers, Inc. v. SMTS, LLC*, 879 F. 3d 731, 735 (6th Cir. 2018) (citations omitted). "Summary judgment will be granted if the plaintiff fails to present sufficient evidence for a reasonable jury to find in its favor on any one of the three elements." *Id.* (citations and quotations omitted).

Secondary meaning "serves to identify the product with its manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001). "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). "Secondary meaning can only be established if a party shows by a preponderance of the evidence that consumers view the trade dress as denoting a single thing coming from a single source." *Leapers*, 879 F.3d at 741 (quotation omitted).

### *b.* *The Multi-Factor Test for Likelihood of Confusion*

The Sixth Circuit has set forth an eight-factor test in order evaluate whether there is a likelihood of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the marks; and (8) likelihood of expansion of the product lines. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *see also Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013). Not all of these factors

will be relevant in every case, and in the course of applying them, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). To create a triable issue of fact, the plaintiff's "burden is to identify a disputed factor or set of factors whose resolution would necessarily be dispositive on the likelihood of confusion issue." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 646 (6th Cir. 2002).

### 2. Rani's Formulaic Assertions of Secondary Meaning and Likelihood of Confusion Lack Any Plausible Factual Basis, and Therefore Do Not Plausibly Support Its Allegation of Liability Under 15 U.S.C. § 1125(a)

For its claim to survive, Rani must do more than "[imply] the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, or to merely offer "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. In *Hensley Mfg. v. ProPride, Inc.*, 579 F. 3d 603 (6th Cir. 2009), the Court applied this principle to allegations of trademark infringement. There, both parties "manufacture[d] and s[old] trailer hitches ... designed by the same man: James Hensley.... [Plaintiff] claim[ed] that [Defendant]'s use of Jim Hensley's name in its advertising material [wa]s likely to confuse consumers and infringe[d] upon [Plaintiff]'s registered trademark in the name 'Hensley.'" *Id*. at 606.

Other than merely *describing* how both parties used the word "Hensley" and *asserting* that this created a likelihood of confusion, however, the plaintiff alleged no facts *demonstrating* either secondary meaning or likelihood of confusion under the governing,

multi-factor tests. Both the district court and the Sixth Circuit agreed that this was insufficient to survive Rule 12(b)(6):

> Here, the complaint does not allege facts sufficient to show that ProPride's use of the "Hensley" name creates a likelihood of confusion as to the source of its products. ... Instead, the complaint challenges ProPride's use of Jim Hensley's name in connection with its advertising of the 3P Hitch. Although Hensley Manufacturing alleges that this creates "a strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods of the Plaintiff and the Defendant," such a conclusory and "formulaic recitation" of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1954 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action ... and expect his complaint to survive a motion to dismiss.")....

> Ultimately, the exhibits attached to the complaint describe Jim Hensley's association with ProPride, his design of the ProPride 3P Hitch, and his former association with Hensley Manufacturing. They do not identify Hensley Manufacturing, or even "Hensley," as the source of ProPride's products or suggest any current association between Hensley Manufacturing and Jim Hensley or ProPride. In fact, the advertisements make clear that Jim Hensley is no longer associated with Hensley Manufacturing. Moreover, they always refer to "Jim Hensley" and never simply use the word "Hensley" in connection with the 3P Hitch. For all of these reasons, we conclude that they do not create a likelihood of consumer confusion regarding the source of ProPride's products....

> Hensley Manufacturing contends that "facts *may exist* that establish a level of consumer confusion" and that "facts *may exist* that establish that `Hensley' is not being used fairly and in good faith." Appellant's Br. at 13 (emphasis added). But mere speculation is insufficient; it was Hensley Manufacturing's burden to allege those facts, if they indeed exist, in the first instance. Simply put, Hensley Manufacturing failed to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *see also Iqbal*, 129 S.Ct. at 1949 (noting that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

*Id*. at 610-11, 613 (underlining added).

The teaching of *Hensley* requires that Rani's complaint be dismissed. Like the plaintiff in *Hensley*, Rani has done nothing more than to *describe* what its juice can looks like, DE 34 ¶10, PgID 218), *assert* that it has secondary meaning (*id.* ¶11 PgID 218-219), *identify* Golden Star's design (*id.* ¶¶20-22, PgID 220-222), and *assert* that consumers will confuse it with Rani's design (*id.* ¶¶23-25, PgID 222-223). To the extent Rani mentions or implies any prong of the multi-factor tests for determining secondary meaning or likelihood of confusion, it merely recites the language of the statue or case law rather than providing any substantive, fact-based warrants for why its assertion is more likely than not to satisfy these detailed tests.

Rani's argument fails most clearly on the issue of secondary meaning. Compared to its original counterclaim, the only additional details Rani has added to its threadbare, formulaic recitation of the elements here is to use slightly more words, and a few photos, to make the same statements about what the parties' respective cans look like. This is not the same thing, however, as alleging—let alone plausibly supporting—the existence of secondary meaning in that appearance. Rani's pleading does not allege a single fact (let alone a sufficient basis) supporting the conclusion that customers recognize Rani's particular combination of colors, fruit images, and bubbles (as opposed to the word "RANI," which is a separate trademark and not part of Golden Star's design) as indicating source in the minds of American consumers. And if Rani's design does not function as trade dress, then the Court never reaches the question of whether there is a likelihood of confusion with that trade dress.

Further, merely saying "these two cans look alike"—which is the extent of Rani's analysis—does not plausibly support likelihood of confusion. Rather, Rani must identify the portion of the can that constitutes its trade dress, and demonstrate that the various likelihood of confusion factors are met.

There is no excuse for not including these facts (if they existed, which they do not) in the Complaint. "Much of the information that courts use to evaluate a trade dress's secondary meaning is naturally in possession of the plaintiff rather than the defendant. Accordingly, the plaintiff should know and allege some essential facts even without the benefit of discovery." *Domo, Inc. v. Grow, Inc.*, No. 2:17-cv-812, 2018 U.S. Dist. LEXIS 79756, at *8 (D. Utah May 9, 2018). Rani has not articulated a plausible explanation for why the otherwise unremarkable, generic design of its fruit cans has sufficient secondary meaning to merit federal trade dress protection, allowing it to exclude other competitors in a crowded marketplace from using even superficially comparable designs. Granting Rani such rights would allow it to pursue not only Golden Star, but potentially every one of the several other beverage retailers that use mono-colored can designs that descriptively portray images of carbonation and fruit chunks to indicate to consumers that the can contains a carbonated fruit chunk beverage inside. Nor has it explained specifically why Golden Star's design in particular is likely to cause actionable customer confusion with such hypothetical rights. If Rani cannot even articulate such a factual predicate at the outset of the case, then it is not entitled to tie up the resources of this Court or of the other parties with oppressive discovery and litigation burdens. The *Twombly/Iqbal*

standard exists to perform precisely that gatekeeping function, as the Sixth Circuit did in *Hensley*.

Cases dismissing trademark and similar Lanham Act claims under similar circumstances are legion, both within the Sixth Circuit[2] and nationwide.[3] Therefore, this Court should dismiss Count I of Rani's counterclaims.

---

[2] *Dow Corning Corp. v. Jie Xiao*, No. 11-10008-BC, 2011 U.S. Dist. LEXIS 54619, at *20 (E.D. Mich. May 20, 2011) ("they have not included factual allegations that allow the court to draw the reasonable inference that Plaintiffs will be able to demonstrate likelihood of confusion" (punctuation omitted)); *Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 184 F. Supp. 3d 572, 580 (W.D. Ky. 2016) ("Plaintiffs have failed to allege plausible facts which would justify this matter proceeding beyond this motion to dismiss"); *Newsboys v. Warner Bros. Records*, No. 3:12-cv-0678, 2013 U.S. Dist. LEXIS 97695, at *3 (M.D. Tenn. July 10, 2013) ("Plaintiff Campbell has failed to allege plausible facts of the likelihood of confusion of the two groups. Plaintiff Campbell's exhibits do not reflect any consumer confusion about the distinctly different music of these two musical groups. Thus, the Court reaffirms its ruling that the Defendants' motion to dismiss should be granted.")

[3] *Domo, Inc. v. Grow, Inc.*, No. 2:17-cv-812, 2018 U.S. Dist. LEXIS 79756, at *8 (D. Utah May 9, 2018) ("Domo alleges that its product has been advertised, marketed and sold nationwide and throughout the world .... But these allegations are generic. There is nothing in them that would not apply to virtually any new business that advertises and otherwise promotes its product. Continuous marketing is a prudent business practice, but it hardly warrants an inference that a business achieved such recognition that in the consumer's mind its trade dress means a single thing coming from a single source."); *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-cv-3685, 2015 U.S. Dist. LEXIS 89415, 2015 WL 4162757, at *9-10 (E.D.N.Y., July 8, 2015) ("the amended complaint is bereft of any factual allegations, other than plaintiff's conclusory allegations, from which it may reasonably be inferred that plaintiff's 'Web Presence' has acquired secondary meaning in the relevant market," and hence "it fails to state a plausible claim of trade dress infringement with respect to plaintiff's Website"); *AJB Enters., LLC v. Backjoy Orthotics, LLC*, No. 3:16-cv-00758, 2016 U.S. Dist. LEXIS 174630, 2016 WL 7341702, at *5 (D. Conn., Dec. 18, 2016) ("[a]n extensive and successful history of selling and advertising the product, without more ... is not sufficient to demonstrate that the claimed trade dress has secondary meaning for purposes of a trade dress infringement claim."); *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) ("plaintiff has failed to allege facts that would support a plausible claim that its trade dress has acquired

**B.    Rani Fails to State a Claim for Copyright Infringement**

Rani's new claim for copyright infringement—which Rani added only after Golden

Star's original motion to dismiss noted its absence—likewise fails to articulate facts that

plausibly support its elements. "Copyright protection subsists ... [only] in original works of

authorship." 17 U.S.C. §102. "A plaintiff may establish a claim of copyright infringement by

showing (1) ownership of a valid copyright in the [work] at issue (here, the [Rani juice cans])

and (2) that the defendant copied protectable elements of the work." *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). Rani does not plausibly

support either element, and its claim is subject to other affirmative defenses.

**1.    Rani's Can Design Is Not Original**

"As to the first prong, the Supreme Court has instructed that '[o]riginal ... means only

that the work was independently created by the author (as opposed to copied from other

---

a secondary meaning," and evaluating the plausibility of plaintiff's allegations by "[e]ach factor of the secondary meaning analysis"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 345-46 (E.D.N.Y. 2014) ("Plaintiffs have failed to plead facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face.... [P]leading [that defendant's product] was intended to cause, and is likely to cause confusion... are legal conclusions and merely track the text of 15 U.S.C. § 1125(a). Moreover, the additional allegations are essentially a formulaic recitation of the [likelihood of confusion] factors... [that] are at best "naked assertion[s] devoid of factual enhancement," Iqbal, 556 U.S. at 677, and as such do not allow the Court to draw the reasonable inference that there is a likelihood of confusion."); *Southgate v. Soundspark, Inc.*, No. 14-CV-13861-ADB, 2016 WL 1268253 (D. Mass. Mar. 31, 2016) (dismissing trademark infringement complaint under *Twombly/Iqbal* where "although ... both companies are involved in the [same] industry, the Complaint does not explain the companies' channels of trade, advertising, or consumer base. In addition, he has not alleged a single instance of confusion.")

works), and that it possesses at least some minimal degree of creativity,' even if the work is not a 'novel' one." *Id*., quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 345-46 (1991). Although originality is "presumptively established by [Rani's] copyright registration[s]," *id*., "defendants may overcome this presumption by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection." *Meshwerks, Inc. v. Toyota Motor Sales USA, Inc.*, 528 F. 3d 1258, 1262 (10th Cir. 2008) (Gorsuch, J.).

Here, even though the case is still at the pleadings stage, the Court may take judicial notice of the fact that many other companies sell float juice in cans that share most or all of the elements in Rani's design. Images and examples of such cans being offered for sale are excerpted in Golden Star's Complaint (DE 1, ¶16, PgID 8-12) and are published in online ecommerce platforms, the authenticity of which cannot be legitimately disputed.[4] Rani cannot claim rights in the idea of using bubbles, color, and fruit on a can; it can only protect (at the very most) its particular expression of that idea. *Lexmark*, 387 F.3d at 535 ("It is a fundamental principle of copyright law that a copyright does not protect an idea, but only the expression of the idea" (citation omitted)). In the face of such facts, Rani cannot (and has not tried to)

---

[4] *See*, *e.g*., < http://tempiregroup.com/dandanahjuice/> (Dandanah Float Juice); < https://www.serenedrink.com/> (Serene Float Juice); https://www.facebook.com/pages/category/Product-Service/Amazon-Food-Beverage-156527341647036/> (Amazon Float Juice); < https://www.instagram.com/sunnynessjuice/?hl=en> (Sunnyness Float Juice); < https://www.nrcdubai.com/juicy-bites.html> (Juicy Bites Float Juice); < http://www.atcoman.co/ORIGINAL-DRINK-240ML> (Original Chunks Float Juice).

meaningfully explain how its use of the same elements could possibly be original. Rani thus fails to plausibly support the first element of a copyright infringement claim.

### 2. Rani Cannot Show Golden Star Copied Protectable Elements of Its Design

Even leaving aside the question of whether Rani's design contains *any* original expression, Rani must still show both that Golden Star *copied* from Rani, and that what it (allegedly) copied was *itself* original and otherwise copyrightable.[5] Rani has not plausibly supported either conclusion. The closest it comes is to say, "Specifically, the cans for the Golden Star ALREEF Products include a blue background, with orange or yellow 'droplets,' sliced fruit, the word 'floats,' the name of the fruit, among other characteristics indicated above, all arranged in the same manner as on the cans for the RANI Products." DE 34, ¶44, PgID 226. Yet it is obvious, both intuitively and in light of the third-party products on the market, that none of those elements—the color blue, the droplets, an image of the fruit contained in the can, the name of the fruit, or even their arrangement on the can—possess the modicum of originality required for copyright protection. And even if they did, Rani can only assert—not show—that Golden Star derived those elements from Rani, and not from any of the several other brands on the market that use all of the same, generic elements. Therefore, Rani fails to support the second element of a copyright infringement claim.

---

[5] "Not all 'copying' is actionable...; it is a constitutional requirement that a plaintiff bringing an infringement claim must prove copying of constituent elements of the work that are original." *Kohus v. Mariol*, 328 F. 3d 848, 853 (6th Cir. 2003) (citations omitted). "Consequently, before comparing similarities between two works a court should first identify and eliminate those elements that are unoriginal and therefore unprotected." *Id.*

### 3. __Rani's Claim Runs Afoul of the Merger and Scenes a Faire Doctrines__

Rani's assertion of copyright is barred by "two ... staples of copyright law — the doctrines of merger and scènes à faire. Where the expression is essential to the statement of the idea, or where there is only one way or very few ways of expressing the idea, the idea and expression are said to have 'merged.' In these instances, copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well." *Lexmark*, 387 F.3d at 535 (citations omitted). "For similar reasons, when external factors constrain the choice of expressive vehicle, the doctrine of 'scènes à faire'—'scenes,' in other words, 'that must be done'—precludes copyright protection." *Id.* "[T]he principle of scenes a faire excludes copyright protection for [elements] which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.... These elements are too general to qualify for copyright protection." *Stromback v. New Line Cinema*, 384 F. 3d 283, 296-97 (6th Cir. 2004). This includes "elements that are 'dictated by external factors such as particular business practices,'" *Kohus v. Mariol*, 328 F.3d 848, 856 (6th Cir. 2003) (citation omitted), and "industry practices." *Automated Solutions Corp. v. Paragon Data Systems*, 756 F.3d 504, 51 (6th Cir. 2014, such as common methods for depicting products.[6]

---

[6] *See*, *e.g.*, *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-cv-03162-BLF, 2016 U.S. Dist. LEXIS 93247, at *15 (N.D. Cal. July 18, 2016) ("no copyright protection may be afforded to the idea of producing an app with popcorn popping on a mobile device screen or to elements of expression that naturally follow from such an idea") (citation omitted); *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F.Supp.2d 542, 544 (S.D.N.Y. 2001) ("common, but

Here, both common sense and the aforementioned publically available data establishes that, when it comes to the design of a fruit juice can, bubbles (or "droplets") are a generic method of indicating carbonation and floating fruit pieces; the name and picture of a particular fruit is a generic method of indicating the type of juice inside; and that cans are generally clad in no more than one or two primary colors. Thus, in the context of float juices, all of the elements Rani claims as its "trade dress" must, practically speaking, be used by *any* purveyor of float juices. At the very least, Rani has certainly failed to articulate any plausible basis for concluding otherwise. Therefore, such elements—no matter how they are arranged—cannot be copyrighted by anyone.

## C.   Rani Fails to State a Claim Under the Michigan Consumer Protection Act

Rani alleges, because of the same supposed similarity between the appearance of the parties' cans described above, that Golden Star's marketing, distribution, and sale of ALREEF float juice products "has a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Golden Star ALREEF Products." DE 34, ¶51, PgID 227. This bald recitation of the statutory text is materially identical to Rani's Lanham Act claim, and must therefore fail for the same reasons that claim does.

___

unlabeled, Chinese food dishes, arranged in various patterns ...would be unprotectable under scenes a faire" even if otherwise original works); *Kim Seng Co. v. J&A Imps., Inc.*, 810 F. Supp. 2d 1046, 1057-58 (C.D. Cal. 2011) ("allowing copyright protection for a photograph of a common Vietnamese dish might give [plaintiff] a monopoly over using such photographs on food packages"); *OHC Grp. LLC v. BLIP, LLC*, No. CV 09-5804 PA (FFMx), 2010 U.S. Dist. LEXIS 149874, at *10 (C.D. Cal. June 7, 2010) ("the way in which the toys are displayed in ... packaging ... seems to be outside the scope of ... copyright protection in general").

Further, while this revised allegation addresses some of the incoherence Golden Star noted in Rani's original counterclaim, it still fails for the other two bases articulated in Golden Star's original motion. Rani made no attempt to address these arguments in its amended pleading, likely because it knows it has no response.

### 1. <u>Golden Star Falls Within the Statute's "Regulated Business" Exemption</u>

This exemption is so gapingly large that it swallows the rule, rendering the MCPA "functionally dead for most potential defendants." MICHIGAN CAUSES OF ACTION FORMBOOK, CHAPTER 12, Inst. for Continuing Legal Ed. (2017), citing Gary M. Victor & Ian B. Lyngklip, *The Michigan Consumer Protection Act Is Virtually Dead Yet the Legislature, Executive Branch, and Many Attorneys Don't Seem to Know It*, Mich BJ, Aug 2012, at 26-29. The exemption provides that "[t]his act does not apply to ... [a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a). And "[t]he Michigan Supreme Court has held that, in determining if a transaction or conduct is exempt from the scope of the MCPA, 'the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Peter v. Stryker Orthopaedics, Inc.*, 581 F. Supp. 2d 813, 816 (E.D. Mich. 2008) (quoting *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28, 38 (Mich. 1999)). Therefore, *any* business that is subject to *any* form of regulation is exempt from the MCPA.

17

Golden Star is a wholesale distributor of imported food and beverage products, including but not limited to the beverages at issue and other ALREEF-branded goods.[7] Such businesses are subject to regulation by, among other authorities,[8] the US Food and Drug Administration,[9] the US Department of Agriculture,[10] and the US Customs and Border Patrol.[11] Among other things, these agencies inspect Golden Star's imported products (including the ALREEF brand) and facilities. Indeed, the FDA has inspected and certified the plant in the United Arab Emirates at which Golden Star makes ALREEF products, and the USDA stations a staff member on site at Golden Star's facility. As such, Golden Star—like virtually every business in the State—is subject to MCPA's "regulated business" exemption.

---

[7] *See, e.g.*, DE 1-1, PgID 20 (Defendants' letter seeking accounting for "all Alreef products imported into the U.S. in Infringing Cans").

[8] If Golden Star were not subject to the regulation of these federal agencies, it would be subject to the authority of the Michigan Department of Agriculture and Rural Development (MDARD) and such statutes as the Michigan Food Law, MCL 289.1101 *et seq*.

[9] *See, e.g.*, https://www.fda.gov/food/food-imports-exports/importing-food-products-united-states (describing FDA inspection regime); https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/golden-star-wholesale-issues-allergy-alert-undeclared-sulfites-dried-apricots-sour (demonstrating FDA regulation of Golden Star ALREEF food & beverage products)

[10] *See, e.g.*, https://www.fsis.usda.gov/wps/portal/fsis/topics/international-affairs/importing-products (describing USDA inspection regime); https://www.ams.usda.gov/sites/default/files/media/PACANationalShipperContactList.pdf (listing Golden Star among USDA-regulated shippers)

[11] *See, e.g.*, https://www.cbp.gov/travel/international-visitors/agricultural-items (describing CBP inspection regime); https://mafiadoc.com/disclosure-foi-request-log-date-range-from-10-01-2012-to-09-30-_5a0a06551723dd11bb564a2b.html at PDF pg. 118 (listing Golden Star among the importers in CBP's files)

## 2.      <u>As a Competitor, Rani Lacks Standing Under the MCPA</u>

The MCPA was adopted to protect consumers, not competitors. Although some courts have allowed competitors to bring claims, "'[t]he majority of cases have reached a contrary opinion[,]' and have concluded that the Michigan Consumer Protection Act does not create a private right of action for a business competitor." *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011), quoting *Watkins & Son Pet Supplies v. Iams Co.*, 107 F.Supp.2d 883, 892 (S.D. Ohio 1999).

For all of these reasons, Count II of the counterclaims must be dismissed.

## D.      <u>Rani Fails to Plausibly Articulate or Plead a Tortious Interference Claim</u>

Count IV of the counterclaims is titled "Tortious Interference With Rani Refreshments' Business Relationships and Expectancy Under Michigan Common Law." The few cursory paragraphs comprising this claim (DE 34 ¶¶55-62, PgID 228-29), however, *still* do not even assert that (or any) claim, let alone plausibly support it.

"The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 706 NW 2d 843, 849 (Mich. Ct. App. 2005). "One who

19

alleges tortious interference with a contractual or business relationship must [also] allege the intentional doing of a *per se* wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131 (2002) (quotation omitted). "A wrongful act *per se* is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R L Polk Co*, 193 Mich App 1, 12-13 (1992). "If the defendant's conduct was not wrongful *per se*, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich App at 131.

Rani's claims fails for at least two reasons. First, it does not allege the "breach or termination" of any business relationship. The only relationship alleged (more directly this time) is the one between Rani as supplier and ZB as distributor, and the only "expectancy" Rani identifies is ZB's expectation of selling more product, which was allegedly reduced by Golden Star's sale of a competitive product. That is not what a tortious interference claim covers. The cause of action requires there to have been an expected business relationship that Golden Star knowingly and wrongfully interrupted. And yet Rani is still very much in relationship with ZB, despite Golden Star's alleged actions.

Second, Rani has not alleged that Golden Star acted with an improper purpose. *Knight Capital Partners v. Henkel AG & Co.*, 930 F. 3d 775, 785 (6th Cir. 2019) ("It is well-settled under Michigan law that a desire to maximize one's own business interests is a legitimate

20

reason to interfere with [plaintiff's] business expectancy"). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 324 (2010) (quotation omitted). "Mere interference for the purpose of competition is not enough." *Trepel v Pontiac Osteopathic Hosp*, 135 Mich App 361, 37 (1984). Thus, "[i]t generally does not constitute improper interference with a contract if a defendant simply takes the initiative to gain an advantage over the competition." *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 282 (2013) (internal quotation marks omitted). In other words, liability may not be predicated on the fact that the defendant "outbid and outmaneuvered" the plaintiff in competitive business dealings. *Feldman v. Green*, 138 Mich App 360, 377 (1984). Rather, the defendant must have done something illegal, unethical, or fraudulent. *Dalley*, 287 Mich App at 324.

Here, the only thing Golden Star is alleged to have done is the "marketing, sale, and distribution in the United States of ALREEF float juice products...." (DE 34 ¶59, PgID 228). In other words, engaging in competition in the marketplace. As a matter of law, that is not an improper motive for purposes of a tortious interference claim. Therefore, Count III of the counterclaims must be dismissed.

E.      **Rani's Own Pleadings Validate Golden Star's Request for a Declaration That It Has Not Infringed Defendants' Rights**

Rani's Answer demonstrates that it has no defense to Golden Star's complaint, and ZB's claims are wholly derivative of Rani's alleged rights. The Court should therefore grant judgment on the pleadings to Golden Star as to both Defendants.

"[W]hen a plaintiff moves for judgment on the pleadings, the motion should be granted if, on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Lowden v. County of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (quotations omitted). "In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *Id*. (citing *Nat'l Metro. Bank v. United States*, 323 U.S. 454, 456-57 (1945) (where, for purposes of plaintiff's motion for judgment on the pleadings, negligence was established where the answer alleged facts which, if true, showed negligence)); *cf. United States ex rel. Tenn. Valley Auth. v. Bagwell*, 698 F. Supp. 135, 136 (M.D. Tenn. 1988) (granting plaintiff's Rule 12(c) motion).

1.      **Golden Star Is Not Infringing Any IP Rights**

Golden Star's complaint states one cause of action for declaratory judgment. The substantive relief it seeks is "[a] declaration that Defendants do not own trade dress or copyright interests in the RANI can design, and that the ALREEF design does not infringe any such rights that may exist." DE 1, PgID 16. ZB does not claim any such rights (*see* DE 14,

PgID 79; DE 19, PgID 124);[12] only Rani does. But the foregoing motion has already demonstrated that Rani cannot plausibly support its claim that it owns trade dress rights or copyrights in the United States as to the asserted can design, nor can it establish that Golden Star has infringed such hypothetical rights. Therefore, Rani has proven Golden Star's point— it has no trade dress or copyright claim against Golden Star, and thus Golden Star is entitled to a declaration to that effect.

### 2.    Golden Star Is Not Interfering in Any "Distribution Rights"

As a corollary to this holding, the Court should also declare that Golden Star is not "interfering in ZB's distribution rights" with respect to the Rani juice products at issue. In its prior motion to dismiss and elsewhere, ZB has repeatedly made this assertion, despite never explaining what "distribution rights" means in this context other than the license it presumably received from Rani to exercise Rani's alleged intellectual property rights. Indeed, Defendants' response to Golden Star's first motion to dismiss has finally admitted plainly that the "distribution rights enjoyed by ZB that were described in ZB's answer to the Complaint ... arise from Rani's Refreshments' bundle of rights." DE 33, PgID 207-08. And in its Order denying ZB's motion to dismiss, this Court likewise held that "[a]s argued by Plaintiff, a fair reading of both [of the demand] letters [that started this lawsuit] is that ZB claims Golden Star interferes with its distribution rights because Golden Star sells a product that infringes on Rani's

---

[12] This Court has already expressed a hope that the parties can "work out a resolution" as to ZB's intellectual property rights in this product, since ZB has disclaimed any such rights in response to Golden Star's complaint. DE 19 at PgID 124.

copyright and trade dress—*i.e.*, that "Alreef beverage products . . . imitate the RANI cans," allegedly causing confusion in violation of the Lanham Act and copyright law. (ECF No. 1-1, PageID.23). So Golden Star plausibly seeks a declaration that ZB has no trade dress or copyright interests to enforce and, if it does, that Golden Star's design does not infringe those rights." DE 19, PgID 124.

Now Rani has finally articulated the basis for Defendants' "interference in distribution rights" argument in the form of its counterclaim for tortious interference. And for at least the reasons explained above, that claim fails as a matter of law. If "distribution rights" means anything in this context, it is simply the contractual agreement through which Rani has given ZB permission to sell its products. Golden Star has done (and could do) nothing to interfere with those private, contractual rights. Any additional, inchoate "distribution rights" ZB may claim by virtue of Rani's supposed intellectual property fail for the same reasons that the intellectual property claims themselves fail. Therefore, as part of the declaration and supplemental "other relief" sought in Golden Star's Complaint (DE 1, PgID 16), the Court should declare that Golden Star is not interfering in any "distribution rights" that either Defendant may have in the Rani juice cans at issue.

## CONCLUSION

For the foregoing reasons, Plaintiff Golden Star Wholesale, Inc. respectfully requests that this Court dismiss Defendant Rani's Counterclaims, grant judgment on the pleadings in Golden Star's favor on the Complaint as to both Defendants, and declare that (1) Rani does

not own protectable trade dress or copyright interests in the RANI can designs; (2) the copyright registrations relied upon by Rani are invalid; (3) the ALREEF design does not infringe any such rights that may exist; and (4) Golden Star has not interfered in any distribution rights that either Defendant may have in the RANI juice products.

Respectfully submitted,

Date: April 29, 2020                                       Attorneys for Plaintiff

WARNER NORCROSS + JUDD LLP
By: /s/ Brian D. Wassom
Brian D. Wassom (P60381)
45000 River Ridge, Suite 300
Clinton Twp., MI 48038
(248) 784-5039
bwassom@wnj.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2020, I electronically filed the foregoing Motion to Dismiss Amended Counterclaims and for Judgment on the Pleadings with the Clerk of the Court using the ECF system which will send notification of such filing to the participants of the ECF system.

By: /s/ Brian D. Wassom