UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLDEN STAR WHOLESALE,
INC.,

     Plaintiff, and Counter-Defendant

v.

ZB IMPORTING, INC., *et al*.,

     Defendants, and Counter-
Plaintiff.

_____ /

Case No. 19-10958

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION TO
<u>DISMISS AND JUDGMENT ON THE PLEADINGS (ECF NO. 35)</u>**

**I.     INTRODUCTION**

This case involves float juice, a soft drink consisting of slightly carbonated

juice with pieces of fruit.  On April 1, 2019, Golden Star Wholesale, Inc., a

manufacturer and seller of float juice, filed a complaint seeking declaratory

judgment against two competitors, ZB Importing, Inc., and Rani Refreshments

FZCO.  (ECF No. 1).  Golden Star seeks a declaration from the court that the

design of its float juice cans do not infringe on any trade dress or copyright

interests of Rani.  (ECF No. 1, PageID.16).

ZB filed its answer.  (ECF No. 20).  Rani also filed an answer but with three

counterclaims.  (ECF No. 28).  Golden Star filed a Motion to Dismiss Rani's

counterclaims and for Judgment on the Pleadings.  (ECF No. 32).  Rani and ZB filed a joint response, and Rani filed an answer with amended counterclaims. (ECF Nos. 33 and 34).  The amended counterclaims allege that Golden Star violated the Lanham Act, 15 U.S.C. § 1125(a) (Count I), Rani's copyrights, 17 U.S.C. § 501 (Count II), the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903 ("MCPA") (Count III), and tortiously interfered with Rani's business relationships and expectancies (Count IV).

On April 29, 2020, Golden Star filed another Motion to Dismiss Rani's amended counterclaims and for Judgment on the Pleadings.  (ECF No. 35).  Rani and ZB filed another joint response, (ECF No. 36), and Golden Star replied, (ECF No. 37).

The court held a hearing on November 10, 2020 and took the subject motion under advisement.  After the hearing, Golden Star filed a Supplemental Brief, attaching records of Rani's copyright from the United States Copyright Office. (ECF No. 41).  According to Golden Star, the records demonstrate that Rani's copyright is even narrower than it first believed.  Rani filed a response arguing that Golden Star's supplemental authority supports rather than detracts from its counterclaims.  (ECF No. 42).

For the reasons stated in this opinion, Golden Star's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## II.   FACTS

Golden Star and Rani produce "float" juices (also known as "chunk" juice), which are slightly carbonated juices with solid fruit pieces.  (ECF No. 1, ¶ 1). They are popular with U.S residents from and raised in Middle Eastern countries. (*Id.*)  Golden Star manufactures and sells float juices called ALREEF while Rani produces another brand called RANI, which ZB imports and sells in the United States.  (*Id.*)

Their cans respectively look like this:





(*Id.* at ¶ 16).

In addition, Golden Star has attached several other brands in the float juice market that it believes have similar can designs:





4



(*Id.*)

According to Golden Star's complaint and attachments, ZB's lawyers sent at least two letters on behalf of itself and Rani accusing Golden Star of copying the appearance of the RANI cans, resulting in copyright and trade dress infringement as well as unfair competition under federal and state law. (ECF No. 1-1). After receiving the letters, Golden Star filed this lawsuit. Golden Star seeks a declaration from the court that its float juice cans do not infringe on any trade dress or copyrights interests of Rani. In response, Rani filed four counterclaims against Golden Star. First, it alleges that Golden Star's importing, marketing, distributing, and selling of its ALREEF cans, which it claims are intentionally similar in appearance to the RANI cans, violates the Lanham Act, 15 U.S.C. § 1125(a) (Count I). (ECF No. 34, PageID.224–25). Second, it alleges that Golden Star violated its copyrights by copying the appearance of the RANI cans (Count II). (*Id.* at PageID.225–27). Third, it alleges that Golden Star's marketing, distributing, and selling of its ALREEF cans constitutes unfair, unconscionable,

and deceptive methods, acts, or practices in the conduct of trade or commerce in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1)(a) (Count III).  (*Id.* at PageID.227–28).  Fourth, it alleges Golden Star's sale of its similar cans tortiously interfere with its expectation of profits from ZB's sale of the RANI float juice (Count IV).  (*Id.* at PageID.228–29).

## III.  DISCUSSION

### A.  <u>Standard of Review</u>

Golden Star has filed both a motion to dismiss and motion for judgment on the pleadings as to Rani's counterclaims.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff or counter-plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint survives a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citation omitted); *See also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). A motion for judgment on the pleadings may be "granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

law." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### B.   Trade Dress Infringement

Rani alleges in Count I of its counterclaims that Golden Star engaged in trade dress infringement by copying the appearance of its cans.  (ECF No. 34, PageID.224).

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects from infringement the unregistered 'trade dress' of a product." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). "'Trade dress' refers to 'the image and overall appearance of a product.'  It embodies 'that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale.'" *Id.*  (brackets and ellipsis omitted) (quoting *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1238–39 (6th Cir. 1991)).  It "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).  "Trade dress might include, for example, the outer shape and design of a Ferrari car . . . , or of a Gibson guitar . . . ; the arrangement,

content, and layout of an Abercrombie & Fitch catalogue . . . ; or the decoration, vibe, and 'motif' of a Mexican restaurant." *Groeneveld Transport Efficiency, Inc. v. Lubecore Intern, Inc.*, 730 F.3d 494, 503 (6th Cir. 2013) (citations omitted).  It "is generally classified into the categories of either 'product design' (also known as 'product configuration') or 'product packaging,' and occasionally a '*tertium quid,*' a third, indeterminate catchall." *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000)).  Here, Rani's trade dress is "product packaging."

To recover for trade dress infringement, the complaining party must prove by a preponderance of the evidence: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Am. Eagle Outfitters*, 280 F.3d at 629. "The first two elements are the requirements for protectability, and the third element is the standard for evaluating infringement." *Id.*  Golden Star argues that Rani's counterclaim fails on two elements: distinctiveness and likelihood of confusion.  (ECF No. 35, PageID.259–66).  The court disagrees.

## 1.    Distinctiveness

There are two forms of distinctiveness.  *Am. Eagle Outfitters*, 280 F.3d at 635.  First, a dress "can be inherently distinctive if its 'intrinsic nature serves to

identify a particular source.'" *Id.* (quoting *Two Pesos*, 505 U.S. at 768).  Second,

"[a] non-inherently distinctive mark or dress can have acquired distinctiveness

through attachment of secondary meaning." *Id.*

As to inherent distinctiveness, under a "now-classic test" proposed in

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)—

"[t]he so-called *Abercrombie & Fitch* taxonomy"—word marks are inherently

distinctive "when they are arbitrary ('Lucky Strike' cigarettes), fanciful ('Kodak'

film), or suggestive ('Tide' laundry detergent)."[1] *Am. Eagle Outfitters*, 280 F.3d at

---

[1] The court notes, however, that the test for non-word marks—such as the trade dress here—is unclear in this circuit.  As to packaging trade dress, the Supreme Court has not held that the *Abercrombie* word-mark spectrum should or should not apply.  1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:13 (5th ed. 2020); *See Samara Bros.*, 529 U.S. at 210 (explaining that, "[i]n the context of *word marks*," courts apply the *Abercrombie* test (emphasis added)); *See also Am. Eagle Outfitters*, 280 F.3d at 635 (explaining that the "*Abercrombie & Fitch* taxonomy deems *word marks* inherently distinctive when they are arbitrary, . . . fanciful, . . . or suggestive" (emphasis added)).  The *Abercrombie* test was developed for "word marks," which include things such as the name "Nike" and "symbol marks, such as Nike's 'swoosh' symbol." *Samara Bros.*, 529 U.S. at 209.  As a result, "[c]ourts have had considerable difficulty in trying to apply to trade dress" the *Abercrombie* test.  MCCARTHY at § 8:13.  "For example, a tomato juice container in the shape of a tomato might be classified as 'descriptive' of the goods.  While a commonly used, standard sized can used as a tomato juice container is not 'descriptive' of the goods, it is hardly inherently distinctive." *Id.*; *See also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010) (explaining that using the *Abercrombie* test to determine whether the subject five-pointed star was inherently distinctive would be a "futile endeavor").  The Sixth Circuit has not resolved this issue. *See Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 600 (N.D. Ohio 2019), *appeal dismissed*, No. 19-3227, 2019 WL 2564576 (2019) ("Although Sixth Circuit case law is fairly developed as to the inherent distinctiveness of word marks, it provides minimal instruction in the areas of product packaging and appearance."); *Select Distributors, LLC v. Breeze Smoke, LLC*, No. 20-12944, 2021 WL 423202, at *4 (E.D. Mich. Feb. 8, 2021) (finding that "the Sixth Circuit's distinctiveness test is concerned with comparing the packaging at issue with those of others in the market" and mentioning the *Seabrook* test).  Instead of using the *Abercrombie* test for non-word-mark trade dress, several circuits now use the *Seabrook* test. *See* MCCARTHY at § 8:13 n.14; *See, e.g., I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27 (1st Cir. 1998); *Amazing Spaces*, 608 F.3d 225; *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir.

635.  "By contrast, descriptive ('Soft Soap') or generic ('soap') terms do not inherently distinguish a good as coming from a particular source."  *Id.* at 635–36.  "Context is important in distinguishing among categories."  *Id.* at 636.  For example, "the word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple-A-Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples."  1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:71 (5th ed. 2020).

Nevertheless, trade dress that is not inherently distinctive can "acquire distinctiveness if secondary meaning has attached to [it], such that consumers recognize [it] as a product of a certain manufacturer."  *Am. Eagle Outfitters*, 280 F.3d at 636.  "Secondary meaning, perhaps more helpfully dubbed 'acquired meaning,' indicates that 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'"  *Groeneveld*, 730 F.3d at 504 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.11 (1982)).  "For example, this

---

1983).  Under that test, the court asks: "(1) whether the design or shape is a common, basic shape or design; (2) whether it was not unique or unusual in a particular field; (3) whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers would view as mere ornamentation."  MCCARTHY at § 8:13.  But at this stage, the court need not resolve this issue.

court has held that the outer-body design of a Ferrari car possesses secondary meaning because Ferrari showed that the public primarily associates that design with a Ferrari car, not just generically with a sports car." *Id.* The court applies a seven-factor test to determine whether a trade dress has acquired secondary meaning: "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying." *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006). "No single factor is determinative and every one need not be proven." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 312 (6th Cir. 2001).

In its Motion to Dismiss, Golden Star argues that Rani fails to show that its cans have secondary meaning. (ECF No. 35, PageID.262–66). In response to Golden Star's Motion to Dismiss, Rani and ZB first argue that Rani's juice cans are inherently distinct. (ECF No. 36, PageID.293–95). According to Rani and ZB, Rani has plausibly alleged that its cans are "inherently distinctive in appearance with a blue background, droplets, sliced fruit, the word 'float' and the name of the fruit all arranged in a unique manner on cylindrical cans." (ECF No. 34, ¶ 29; ECF No. 36, PageID.295). Golden Star, on the other hand, insists that Rani's cans are not inherently distinctive because the various elements of their can "are generic

and used by at least six competitors other than Rani and Golden Star within the 'float/chunk beverage' subcategory of soft drinks." (ECF No. 37, PageID.322). According to Golden Star, "nothing in the pleadings other than Rani's say-so suggests its design is inherently distinctive." (*Id.*)

As to inherent distinctiveness, the court agrees with Rani and ZB. Rani has provided a detailed description of the appearance of its cans: "a blue background, with orange or yellow 'droplets,' sliced fruit, the word 'float,' the name of the fruit, among other distinctive characteristics indicated above, all arranged in a unique manner on cylindrical cans." (ECF No. 34, ¶ 29). It has also provided pictures of its cans—as has Golden Star. (*Id.* at ¶ 21; ECF No. 1, ¶ 16). And it has alleged that the appearance of its cans "is inherently distinctive and has also become so well known that consumers recognize the RANI Products by the appearance or 'trade dress' of the cans and associate those cans with Rani Refreshments." (ECF No. 14, PageID.218–19). Based on these allegations, the court finds that Rani has plausibly set forth sufficient facts to show inherent distinctiveness. *See, e.g.*, *Rosta AG v. Lovejoy, Inc.*, No. 1:16-cv-199, 2017 WL 8894646, at *6 (W.D. Mich. Mar. 29, 2017) (denying a motion to dismiss because the plaintiff alleged that the color blue, which it had used as early as 1988, identified the source of its products, and it included a picture of the product); *IT Strategies Grp., Inc. v. Allday Consulting Grp., LLC.*, No. 13-60014-Civ-Scola,

2014 WL 11531625, at *3 (S.D. Fla. July 17, 2014) (denying a motion to dismiss

because the plaintiff "provided a detailed description of its trade dress, even

including a visual depiction of it," and "made the allegation that its trade dress is

inherently distinctive"). As to Golden Star's argument that the elements of Rani's

cans are used by other competitors, it is really an argument that no reasonable juror

could find Rani's trade dress inherently distinctive. But at this stage, Rani need

only allege "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Rani and ZB also argue that even if Rani's cans are not inherently

distinctive, Rani sufficiently pleads that its cans have acquired secondary meaning.

(ECF No. 36, PageID.295–97). They contend that secondary meaning can be

inferred from Golden Star's alleged intentional copying of its juice can. (*Id.* at

PageID.296). According to Rani and ZB, intentional copying is the only

explanation for the nearly identical appearance of Rani's and Golden Star's cans.

(*Id.*) They also argue that Rani adequately pleads secondary meaning because it

has alleged that the appearance of its cans are "well known" by consumers and

"used globally in more than 70 countries." (*Id.* at PageID.297). By contrast,

Golden Star argues that Rani has "alleged no facts *demonstrating* either secondary

meaning or likelihood of confusion under the governing, multi-factor tests." (ECF

No. 35, PageID.262–63; ECF No. 37, PageID.321–23). This argument fails.

To begin with, Rani adequately pleads that Golden Star intentionally copied the appearance of its cans.  Rani alleges that "the similarities are so substantial" that it "indicates that the cans for the RANI Products were intentionally copied with the full knowledge of Golden Star."  (ECF No. 34, ¶ 22, ¶ 31).  And it provides pictures of the cans for support.  (*Id.* at ¶ 22).  The court finds, based on these allegations, that Rani adequately pleads intentional copying.  *See, e.g.*, *Garnier-Theibaut, Inc. v. Castello 1935 Inc.*, No. PWG-17-3632, 2018 WL 2268154, at *5 (D. Md. May 17, 2018) (finding at the motion to dismiss stage plaintiff's allegation that the defendant "directly copied and held out as their own, an exact copy of GT's protected work," to be sufficient); *Someecards v. SnarkeCards, LLC*, No. 3:14-cv-00097, 2014 WL 3866024, at *2 (W.D.N.C. Aug. 6, 2014) (finding at the motion to dismiss stage plaintiff's allegations of intentional copying along with images of its products and the infringing products to be sufficient).  On its own, that allegation may be sufficient to survive dismissal because "evidence of intentional copying shows the strong secondary meaning of [a product]."  *Am. Eagle Outfitters*, 280 F.3d at 639 (quoting *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991)).  As the Sixth Circuit has explained, "[t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence."  *Id.*  Nevertheless, Rani has also made additional allegations as to secondary meaning.  It has alleged that the "cans for the

RANI Products is well known to consumers and associated with the RANI brand"
(ECF No. 34, ¶ 30), that its trade dress is "used globally in more than 70 countries"
(*Id.* at ¶ 13), and that it has, through ZB, "imported, marketed, sold and
distributed" its products in Michigan "[f]or several years" (*Id.* at ¶ 16). In light of
these allegations, the court finds that Rani has adequately alleged secondary
meaning.

In support of its argument, Golden Star relies on *Hensley Mfg. Inc. v.
ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009). However, that case addressed
"trademark infringement" claims, not trade dress, and it considered only the
likelihood-of-confusion element. The case, as a result, is inapt. And to the extent
that Golden Star relies on *Hensley* for the basic proposition that conclusory and
formulaic recitations of the elements of a claim are insufficient to survive motions
to dismiss, the court has already noted that Rani has marshaled sufficient factual
support for inherent distinctiveness and secondary meaning.

Therefore, the court finds that Rani has adequately alleged distinctiveness.

### 2.      Likelihood of Confusion

As to confusing similarity, also called "likelihood of confusion," the test "is
whether an ordinary consumer would confuse the products at issue, which in fact
come from different sources, as emanating from a single source or from associated
sources." *Groeneveld*, 730 F.3d at 504. "The 'general concept underlying the

likelihood of confusion is that the public believe that the mark or dress owner sponsored or otherwise approved the use of the trademark or trade dress.'" *Id.* (quoting *Am. Eagle Outfitters*, 280 F.3d at 645). "Whereas nonfunctionality and secondary meaning are required to show protectability—that is, that the plaintiff's trade dress is capable of Lanham Act protection in the first place—likelihood of confusion is required to show that the trade dress has in fact been infringed by the defendant." *Id.* (citing *Am. Eagle Outfitters*, 280 F.3d at 629).

Courts consider eight factors to determine whether there is likelihood of confusion: "1) strength of the plaintiff's mark, 2) relatedness of the goods, 3) similarity of the marks, 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) defendant's intent in selecting the mark, and 8) likelihood of expansion of the product lines." *Id.* at 509 (quoting *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985)). "These factors are helpful guides rather than rigid requirements." *Id.* "[A] particular factor might receive a greater or lesser weight depending on the circumstances." *Id.* As a result, courts have sometimes "resolved the question of confusion by reference to only one or a few of these factors, without inquiring into the rest." *Id.*

Furthermore, "[t]he appropriate benchmark for assessing the likelihood of confusion is the ordinary consumer who would consider buying the product at issue," with "the focus [] on 'the typical buyer exercising ordinary caution,' not

'the most obtuse consumer.'"  *Id.* (first quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 285 (6th Cir. 1997); then quoting *Am. Eagle Outfitters*, 280 F.3d at 648).

Golden Star argues that Rani has failed to allege any facts to make likelihood of confusion plausible.  (ECF No. 35, PageID.262–66).  According to Golden Star, "these two cans look alike" is the extent of Rani's analysis and does not plausibly support likelihood of confusion.  (*Id.* at PageID.265).  In response, Rani and ZB argue that Rani sufficiently pleads five of the eight factors.  (ECF No. 36, PageID.297).  They also argue that Golden Star is improperly attempting to hold Rani to a summary judgment standard.  (*Id.* at PageID.298).  The court agrees.

First, Rani alleges the strength of its mark.  "This factor 'focuses on the distinctiveness of a mark and its recognition among the public.'"  *Groeneveld*, 730 F.3d at 516 (quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012)).  As noted, Rani adequately pleads distinctiveness, and it has alleged "the strength of the RANI Brand."  (ECF No. 34, ¶ 23).  Second, Rani alleges the relatedness of its and Golden Star's products.  (*Id.* at ¶ 1).  This factor addresses whether the products "perform the same function and directly compete in the industry."  *Groeneveld*, 730 F.3d at 516–17.  There can be no dispute that Rani and Golden Star produce similar products that directly compete.  Third, Rani alleges the similarity of its cans and Golden Star's, and provides

pictures as evidence.  (ECF No. 44, ¶¶ 21–22).  Fourth, Rani alleges that actual

confusion between the two float juices has occurred and will continue to occur.

(*Id.* at ¶ 24).  Fifth, Rani alleges that both companies market their float juices in

Michigan and that there is "overlap in marketing channels and customers for the

products." (*Id.* at ¶ 16, 23).  And sixth, Rani alleges that Golden Star has

intentionally copied its trade dress.  (*Id.* at ¶ 22).  These allegations, in sum and

viewing them in the light most favorable to Rani, more than adequately plead

likelihood of confusion.  *See, e.g.*, *YETI Coolers, LLC v. JDS Indust., Inc.*, 300 F.

Supp. 3d 899, 912 (W.D. Tex. Mar. 12, 2018) (finding sufficient at the motion to

dismiss stage the plaintiff's allegations that the defendant sold drinkware similar in

size, shape, and material and that the defendant intentionally infringed its trade

dress).

Golden Star again relies on *Hensley* to support its position.  The fact that

*Hensley* addressed trademark infringement is less of a hinderance here because the

likelihood-of-confusion factors are the same for both trademark infringement and

trade dress infringement.  Yet, the case remains unhelpful because the court never

addressed the likelihood-of-confusion factors in *Hensley*.  579 F.3d at 610–11.

Instead, the *Henlsey* court addressed a different issue: "whether the defendants 'are

using the challenged mark in a way that identifies the source of their goods.'" *Id.*

at 610 (quoting *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326

F.3d 687, 695 (6th Cir. 2003)).  According to the court, "[i]f they are not, then the mark is being used in a "non-trademark way" and trademark infringement laws, along with the eight-factor analysis, do not even apply." *Id.* (quotation marks omitted).  The court ultimately found that the defendant had not used "Hensley" in a trademark way. *Id.* at 611.  But this is not at issue here.  And while *Hensley* notes that a conclusory and formulaic recitation of likelihood of confusion is insufficient to survive motions to dismiss, *id.*, the court has already noted that Rani has sufficiently alleged confusion.

In sum, the court finds that Rani's counterclaim adequately pleads distinctiveness and likelihood of confusion.  Rani, therefore, pleads a plausible claim for trade dress infringement.  As a result, Golden Star's Motion to Dismiss as to Rani's trade dress claim is **DENIED**.

### C.  Copyright Infringement

Rani also alleges that Golden Star has infringed its copyrights, which "protect the appearance of the cans for the RANI Products."  (ECF No. 34, PageID.225–27).  To establish copyright infringement, a plaintiff must show (1) "ownership of a valid copyright" and (2) "that the defendant copied protectable elements of the work." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387

F.3d 522, 534 (6th Cir. 2004).  Golden Star argues that Rani has failed to allege

both elements.  (ECF No. 35. PageID.267–71).

### 1. Originality

"The first prong tests the originality and non-functionality of the work."  *Id.*

There are five elements to establish to establish the validity of a copyright:

> (1) originality in the author; (2) copyrightability of the subject matter;
> (3) a national point of attachment of the work, such as to permit a
> claim of copyright; (4) compliance with applicable statutory
> formalities; and (5) (if the plaintiff is not the author) a transfer of
> rights or other relationship between the author and the plaintiff so as
> to constitute the plaintiff as the valid copyright claimant.

*Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 476 (6th Cir. 2015)

(quoting 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §

13.01[A] (2003)).  Golden Star argues only that Rani's copyright is not original.

Originality has two aspects.  First, "[o]riginal . . . means only that the work

was independently created by the author (as opposed to copied from other works)."

*Lexmark*, 387 F.3d at 534 (quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv.*

*Co., Inc.*, 499 U.S. 340, 345–46 (1991)).  Second, it must possess "at least some

minimal degree of creativity, even if the work is not a 'novel' one."  *Id.*  This

"threshold showing of originality is not a demanding one."  *Id.*  As the Supreme

Court noted in *Feist*, "the requisite level of creativity is extremely low; even a

slight amount will suffice.  The vast majority of works make the grade quite easily,

as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." 499 U.S. at 345 (quoting NIMMER at § 1.08[C][1]).

Furthermore, "Congress has bestowed upon those who have obtained copyright registration 'made before or within five years after first publication of the work" a presumption of validity "[i]n any judicial proceeding[ ]."" *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015) (quoting 17 U.S.C. § 410(c)). "A certificate of registration 'constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate.'" *Id.* In particular, originality is "presumptively established by [a] copyright registration." *Lexmark*, 387 F.3d at 534. This presumption may be rebutted, but "it is the burden of the party challenging the copyright to do so." *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995); *See also Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008) ("[D]efendants may overcome this presumption by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection."). However, "'[t]he evidentiary weight to be accorded the certificate of a registration made' more than 'five years after first publication of the work' 'shall be within the discretion of the court.'" *Varsity Brands*, 799 F.3d at 477 (quoting 17 U.S.C. § 410(c)).

Golden Star concedes that Rani's copyright registrations presumptively establish originality.  (ECF No. 35, PageID.268).  Nevertheless, it believes it overcomes this presumption because "many other companies sell float juice in cans that share most or all of the elements in Rani's design." (*Id.*, ECF No. 37, PageID.324).  Rani and ZB respond that Golden Star has failed to overcome the presumption because it has not offered proof that Rani copied its design from other companies.  (ECF No. 36, PageID.301–02).  And even if Golden Star has rebutted the presumption and shifted the burden back to Rani, they argue that the unique arrangement of Rani's cans is sufficiently original.  (*Id.* at PageID.302).  The court agrees with Rani and ZB.

According to the certificates of registration (ECF Nos. 34-2, 34-3, 34-4), the can designs were first published on October 15, 2004, and they were not registered until May 9, 2019.  Because the certificates were made more than five years after the first publication, their evidentiary weight is typically within the discretion of the court.  Golden Star, however, concedes that originality is presumptively established by Rani's copyright.  (ECF No. 35, PageID.268).  Furthermore, "even with respect to a registration certificate not obtained before or within five years after first publication of the work, a court exercising the discretion reposed in it would usually be well advised . . . [to accord] such a certificate a *prima facie* presumption, absent circumstances that call into question the reliability of the facts

contained in the certificate." NIMMER at § 12.11[B][1][a]. Here, the court finds no reason to question the reliability of the facts in the certificates. As a result, the court will accord Rani's cans their presumption of originality based on its registrations.

"Upon introduction of a properly registered certificate, the burden shifts to defendant to prove that plaintiff copied from a prior source and, hence, was not original". *Id.*; *See also Masquerade Novelty, Inc. v. Unique Indust., Inc.*, 912 F.2d 663, 668–69 (3d Cir. 1990) ("Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality."). Golden Star argues that it can rebut the presumption, and asks the court to "take judicial notice of the fact that many other companies sell float juice in cans that share most or all of the elements in Rani's design." (ECF No. 35, PageID.268). This is not enough, however, to rebut the presumption of originality. First, Golden Star has not argued that Rani copied its can design from any other competitors; instead, it claims that Rani cannot claim any originality in the elements of its can because they are used by competitors. Therefore, Golden Star has not met its burden to show that Rani copied the design for its cans from a prior source. Second, even if Golden Star rebutted the presumption, Rani claims a copyright in the arrangement of its cans—

not the individual elements.  As this stage, the court finds it plausible that Rani's

can design is an original work.  *See, e.g.*, *W.H. Midwest, LLC v. A.D. Baker

Homes, Inc.*, No. 2:18-cv-1387, 2019 WL 4645497, at *3 (S.D. Ohio Sept. 24,

2019) ("The way that the creator composes and arranges [] elements into a design,

however, can be considered original and thus worthy of protection."); *X-IT Prod.,

L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 610 (E.D. Va.

2001) ("X–IT does not—indeed it cannot—claim a copyright in the individual

words or slogans that comprise X–IT's cover art.  X–IT does have a valid

copyright, however, in the creation and composition of X–IT's cover art as a

whole, which necessarily includes the arrangement of the individual elements.").

Furthermore, the alleged similarity amongst different float juice cans in the market,

on its own, is not dispositive of originality.  *See* NIMMER at § 2.01[A][1] ("[A]

work is original and may command copyright protection even if it is completely

identical with a prior work, provided it was not copied from that prior work but is

instead a product of the independent efforts of its author.").  Thus, the court finds

that Rani adequately alleges that its designs are original.

## 2.  Copying

The second prong has two inquiries.  It "tests whether any copying occurred

(a factual matter) and whether the portions of the work copied were entitled to

copyright protection (a legal matter)."  *Lexmark*, 387 F.3d at 534.  Although

Golden Star does not clearly distinguish between copying as a factual matter and copying as a legal matter, the court finds that it has argued Rani fails to allege copying under both inquiries.

### a.  Copying as a Factual Matter

As to copying as a factual matter, the question is whether "the defendant, in creating its own rival work, used the plaintiff's material as a model, template, or even inspiration."  NIMMER at § 13.01 [B]; *See also Ross, Brovins & Oehmke PC v. Lexis/Nexis*, No. 03-74474, 2005 WL 427927, at *9 (E.D. Mich. Jan. 31, 2005). A plaintiff (here counter-plaintiff) can show copying through either direct or indirect evidence.  *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010).  In the absence of direct evidence, such as here, "a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'"  *Id.* (quoting *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003)).  "As for substantial similarity 'when the question is copying as a factual matter, then similarities that, in the normal course of events, would not be expected to arise independently in the two works are probative of defendant's having copied as a factual matter from plaintiff's work.'"  *Auto Inspection Servs., Inc. v. Flint Auto Auction, Inc.*, No. 06-15100, 2006 WL 3500868, at *5 (E.D. Mich. Dec. 4, 2006) (quoting NIMMER at § 13.01[B]).

Golden Star argues that Rani can only assert, and not show, that Golden Star copied from it as opposed to the several other brands on the market. (*Id.*) The court notes that this argument is relatively skeletal. Regardless, addressing the merits, the court finds that Rani sufficiently pleads that Golden Star copied from Rani based on similarities between their two products. Rani alleges that "Golden Star ALREEF Products are intentionally similar to and copy the copyright protected cans for the RANI Products." (ECF No. 34, ¶ 43). It notes that the various elements of the Golden Star cans are "all arranged in the same manner as on the cans for the RANI Products." (*Id.* at ¶ 44). And it claims that Golden Star distributed the ALREEF Products, which it "knew copied the cans for the RANI Products." (*Id.* at ¶ 45). In support, Rani has also provided pictures of the various cans for comparison of their similarities. (*Id.* at ¶ 21). Based on these facts, the court finds that Rani adequately pleads copying as a factual matter.

### b. Copying as a Legal Matter

Even if a plaintiff can demonstrate copying as a factual matter, the defendant may still not be liable. "Not all 'copying' is actionable." *Kohus*, 328 F.3d at 853; NIMMER at § 13.01[B] ("[C]opying as a factual matter is insufficient."). "[I]t is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original.*'" *Kohus*, 328 F.3d at 853 (quoting *Feist*, 499 U.S. at 361). Regardless of how copying is proved,

courts generally require—somewhat confusingly—another showing of substantial

similarity to prove the second element: copying as a legal matter.[2]  *See id.* at 853–

54 (discussing the substantially similar requirement in the context of copying as a

legal matter); *See also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir.

2000) ("'Substantial similarity' also is important in a second, more focused way.

No matter how the copying is proved, the plaintiff also must establish specifically

that the allegedly infringing work is substantially similar to the plaintiff's

work *with regard to its protected elements*.").  "[T]his court applie[s] a two-step

approach for determining whether substantial similarity exists." *R.C. Olmstead*,

606 F.3d at 274.

  First, the factfinder asks "what aspects of the copyright work, if any, are

protected." *Id.* at 274–75.  "The essence of the first step is to filter out the

---

[2] As Nimmer and a number of courts have noted, requiring a plaintiff to show substantial similarity—but in two different senses of the term—is confusing to say the least.  *See, e.g.*, *Jedson Engineering, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 920 n.5 (S.D. Ohio 2010) ("Of course, using the term 'substantial similarity' in two distinct portions of copyright analysis can be confusing.").  Instead, Nimmer recommends, as to proving copying as a factual matter, that "the term 'substantial similarity' be discarded in favor of 'probative similarity.'"  NIMMER at § 13.01[B].  In other words, "[e]ven when there is no dispute about (a) the validity of plaintiff's copyright, (b) defendant's access to the work, and (c) 'very strong resemblances between them,' the result is only to show *probative similarity*." *Id.* at § 13.03[A]; *See also Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993) (explaining that a plaintiff can demonstrate copying "through indirect evidence that shows (1) that the defendant had access to the copyrighted program, and (2) that there are *probative similarities* between the copyrighted material and the allegedly copied material" (emphasis added)).  A plaintiff must then show that the defendant's work is substantially similar to the plaintiff's copyright.  But the court is unaware of Sixth Circuit cases distinguishing probative similarity from substantial similarity.  For this reason, the court continues to the term "substantially similar" as to both inquiries—but, of course, in their appropriate senses.

unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity, *see Feist*, 499 U.S. at 345, 111 S. Ct. 1282—through a variety of analyses." *Kohus*, 328 F.3d at 855. "It is axiomatic, to begin with, that mere abstract ideas are not protectible, but the expression of an idea is." *Id.*

"It is also important to filter out *scenes a faire*: 'those elements that follow naturally from the work's theme, rather than from the author's creativity,' 4 NIMMER § 13.03[F][3], or elements that are 'dictated by external factors such as particular business practices,' *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 401 (5th Cir. 2000)." *Id.* at 856. For example, "parties, alcohol, co-eds, and wild behavior are natural elements in a story about a college fraternity." *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th Cir. 2004).

Similarly, "[w]here the 'expression is essential to the statement of the idea,' . . . or where there is only one way or very few ways of expressing the idea, the idea and expression are said to have 'merged.'" *Lexmark*, 387 F.3d at 535 (first quoting *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61, 68 (2d Cir. 1994); then citing *Warren Publ'g, Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1519 n. 27 (11th Cir. 1997)). "In these instances, copyright protection does not exist because granting protection to the expressive component of the work

necessarily would extend protection to the work's uncopyrightable ideas as well."

*Id.* For example:

> [I]magine the symbol often used on public signs displaying a circle with a diagonal line crossed through it. When, for example, an image of a cigarette is centered in the middle of the circle with the line through it, this visual sign expresses the idea that smoking is not allowed. This same symbol is used in a wide variety of contexts to express that something is prohibited, e.g., no swimming, no food or drink, no cell phone. Since there are effectively only a few ways of visually presenting the idea that an activity is not permitted, copyright law would not protect the expression in this case, i.e., the circle with the line through it.

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1143 (11th Cir. 2007).

When determining whether these doctrines of merger and *scenes a faire* apply, courts "focus on whether the idea is capable of various modes of expression." *Lexmark*, 387 F.3d at 536 (quoting *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992)). "The question, however, is not whether *any* alternatives theoretically exist; it is whether other options practically exist under the circumstances." *Id.* "[I]n short, the alternatives must be feasible within real-world constraints." *Id.*

Second, once the non-protectable elements have been filtered out, the factfinder asks whether "the [defendant's] work involves elements that are substantially similar to the protected elements of the original work." *R.C. Olmstead*, 606 F.3d at 275. "Two works are substantially similar when 'they are so alike that the later (unprotected) work can fairly be regarded as appropriating

the original expression of the earlier (protected) work.'" *Enchant Christmas Light Maze & Market Ltd. V. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 67 (1st Cir. 2009)).  "[T]his determination should be based on the judgment of the ordinary reasonable person (i.e., the ordinary lay observer)." *Kohus*, 328 F.3d at 856.

Golden Star first repeats its argument that the elements of Rani's cans—the color blue, the droplets, an image of the fruit contained in the can, the name of the fruit—do not possess "the modicum of originality required for copyright protection."  (ECF No. 35, PageID.269).  But as discussed above, Rani claims a copyright in the arrangement and appearance of the various elements of the can— in other words, the design as a whole—not the individual elements.  In reply, Golden Star also argues that even this arrangement is not original.  (ECF No. 37, PageID.324).  But it provides no additional reasoning beyond the conclusory statement that the arrangement "contains [no] original expression."  (*Id.*)  Indeed, "issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put

flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Hence, the argument fails.[3]

Golden Star also argues that the doctrines of merger and *scenes a faire*

apply.  According to Golden Star, both apply because "when it comes to the design

of a fruit juice can, bubbles (or 'droplets') are a generic method of indicating

carbonation and floating fruit pieces; the name and picture of a particular fruit is a

generic method of indicating the type of juice inside; and that cans are generally

clad in no more than one or two primary colors."  (ECF No. 35, PageID.271).  In

other words, "all of the elements Rani claims as its 'trade dress' must, practically

speaking, be used by any purveyor of float juices."  (*Id.*)  The court disagrees.

At this stage, Golden Star has not demonstrated that cans with blue

backgrounds, droplets, images of fruit contained in the can, and the name of the

fruit are the only ways to express float juice.  It is plausible that alternative designs

that portray float juice on a can exist.  Indeed, some of the can designs that Golden

Star has provided are at odds with its argument, providing evidence that float juice

cans are capable of various modes of expression.  *See, e.g.*, *Innovation Ventures,*

*LLC v. N2G Distributing, Inc.*, 635 F. Supp. 2d 632, 640 (E.D. Mich. 2008)

---

[3] The court notes that Golden Star filed a supplemental brief on November 19, 2020 (ECF No. 41), which included three pictures of deposits from the U.S. Copyright Office.  According to Golden Star, the deposits show that the scope of Rani's copyright is narrower than it asserts because the deposits "include only 'the blue background, colored droplets, sliced fruit, the word "floats,"' but not the remaining elements.  (*Id.* at PageID.334).  At this stage in the proceedings, the court finds that these deposits do not change its analysis.

(rejecting application of merger and *scenes a faire* because although the subject medical statements all expressed the same basic facts, the word choice and word order differed, suggesting no standard way to express the idea).  For example, while Golden Star claims that blue is the only feasible color for the background of float juice cans, it provides two brands that do not have blue backgrounds.  (*See* ECF No. 1, ¶ 16).  Similarly, another brand does not have droplets.  (*Id.*)  The court, as a result, finds that Rani adequately pleads copying.

For these reasons, the court finds that Rani pleads a plausible claim for copyright infringement.  Accordingly, Golden Star's Motion to Dismiss is **DENIED** as to Count II.

### D.    <u>Michigan Consumer Protection Act</u>

Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful," including "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  Mich. Comp. Laws § 445.903(1)(a).  Golden Star argues that Rani's MCPA claim fails for three reasons: (1) the claim fails for the same reasons Rani's trade dress claim fails; (2) Golden Star falls with the "regulated business" exemption under the MCPA; and (3) Rani lacks standing under the MCPA.  (ECF No. 35, PageID.271–74).

First, Golden Star argues that Rani's MCPA claim fails for the same reasons that its Lanham Act claim fails.  (*Id.* at PageID.271).  The same legal standard under the Lanham Act applies to the MCPA.  *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1104–05 n.1 (6th Cir. 1991) (noting that the federal Lanham Act involves the same dispositive questions as the MCPA and common law unfair competition); *Shock-Tek, LLC v. Trek Bicycle Corp.*, No. 01-71986, 2001 WL 1680191, at *2 n.1 (E.D. Mich. Dec. 18, 2001) ("The count for unfair competition in violation of the Lanham Act (Count II) and the count for unfair competition in violation of the Michigan Consumer Protection Act (Count III) are functionally the same.  The standard for asserting a valid claim for unfair competition is the same under each of the statutes.").  But as noted, the court finds that Rani adequately pleads trade dress infringement.

Second, Golden Star argues that it falls within the MCPA's "regulated business" exemption.  The MCPA is inapplicable to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  As to when this exemption applies, the Michigan Supreme Court has held that "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.'  Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the

specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 597

N.W.2d 28, 38 (Mich. 1999). "Specifically authorized" means that the general

transaction is "explicitly sanctioned." *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d

514, 520 (Mich. 2007). "The party claiming the exemption bears the burden of

proving its applicability." *Id.* at 517. The exemption is "an affirmative defense."

*Id.* at 517 n.13.

According to Golden Star, "the MCPA is a dead letter, because any business

that is subject to *any* form of regulation is exempt from the it." (ECF No. 37,

PageID.325; ECF No. 35, PageID.272). It claims that wholesale distributors of

imported food and beverages, including but not limited to float juices, are subject

to regulations by the United States Food and Drug Administration, the Department

of Agriculture, and the Customs and Border Patrol. (*Id.* at PageID.273). Rani and

ZB, on the other hand, argue that "Golden Star has failed to identify in what

'regulated industry' it does business." (ECF No. 36, PageID.304). They

underscore that "[u]nless the exemption is read to include only industries that are

subjected to specialized regulation, the exemption will mean that no business

transaction whatsoever is subject to the MCPA." (*Id.*) They also claim that

Golden Star has alleged "with no evidence that it is regulated under almost every

regulatory scheme that could conceivably apply to food and beverage products."

(*Id.* at 304–05).

35

The court finds it inappropriate to address this issue at this stage.  "Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State Street Bank and Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012), *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014).  But a court may grant a motion to dismiss based on an affirmative defense if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief."  *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012) (quoting 5B CHARLES ALAN WRIGHT, ARTHUR MILLER, MARY KAY KANE & RICHARD MARCUS, FEDERAL PRACTICE & PROCEDURE § 1357 at 713 (3d ed. 2004)).  Here, Rani's Amended Counterclaims neither anticipates the "authorized transactions" exemption under the MCPA nor does it address any of the regulations that Golden Star claims apply.  *Cf. In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 691 (N.D. Ohio 2020) (rejecting the plaintiff's argument that the authorized transaction exemption is premature at the motion to dismiss stage because the plaintiff's "own allegation of violations of DEA and FDA regulations indicate[d] the authorized transaction exemption applie[d]").  As a result, the court will not address the exemption at this stage.

Third, Golden Star argues that Rani lacks standing under the MCPA because the majority of cases have held that the MCPA does not create a private right of

action for business competitors.  (ECF No. 35, PageID.274).  Citing *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011), Rani and ZB respond that the Eastern District of Michigan has held that competitors have standing under the MCPA.  (ECF. No. 36, PageID.303–04).

As noted, the MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of *trade or commerce*."  Mich. Comp. Laws § 445.903(1).  "Trade or commerce" is defined as:

> the conduct of a business providing goods, property, or service
> primarily for personal, family, or household purposes and includes the
> advertising, solicitation, offering for sale or rent, sale, lease, or
> distribution of a service or property, tangible or intangible, real,
> personal, or mixed, or any other article, or a business opportunity.

Mich. Comp. Laws § 445.902(1)(g).  The clause "primarily for personal, family, or household purposes" modifies the words "goods, property, or service."  *See Robertson v. State Farm Fire and Cas. Co.*, 890 F. Supp. 671, 678 (E.D. Mich. 1995); *Noggles v. Battle Creek Wrecking, Inc.*, 395 N.W.2d 322, 324–25 (Mich. Ct. App. 1986)*.*

Any "person" may bring an action under § 445.903(1).  The MCPA defines "person" as "an individual, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity."  Mich. Comp. Laws § 445.902(1)(d).

Federal district courts in Michigan have held that competitors have standing to sue under the MCPA. *See, e.g.*, *John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 967–70 (E.D. Mich. 1994); *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011); *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 901–03 (W.D. Mich. Mar. 15, 2001); *cf. Wynn Oil Co. v. Am. Way Serv. Corp.*, 736 F. Supp. 746, 756–57 (E.D. Mich. 1990). For example, in *Labatt*, the court accepted that the MCPA's purpose is to protect consumers, but found that policy to be "equally well served by allowing suit to be brought under the Act by business competitors." *Labatt*, 853 F. Supp. at 970.

In *Action Auto Glass*, the court agreed with the reasoning in *Labatt*. 134 F. Supp. 2d at 902. It added that the statute's text permits any "person" to sue, which includes businesses. *Id.* at 903. As the court underscored:

> While it is true that the legislature used the word "person" to describe who may be a plaintiff as well as who may be a defendant, it is also true that had the legislature intended to allow only individuals to sue under the MCPA, it could have easily used the term "individual" to limit the potential plaintiffs under M.C.L. § 445.911(1) and (2).

*Id.* And it also agreed with *Labatt* that allowing competitors to sue under the MCPA is consistent with its purpose to protect consumers: "for example, where a competitor makes allegedly false statements about a competitor's product or business practices, the ultimate resulting harm is to the consumer, who may be

swayed into purchasing an inferior product or paying more for the same product."
*Id.*

The court finds this reasoning persuasive.  In particular, "[w]hen we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end."  *Bates v. Dura Automotive Systems, Inc.*, 625 F.3d 283, 285 (6th Cir. 2010) (quoting *Bartlik v. U.S. Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995)). Here, the MCPA—according to its plain meaning—permits any "person" to bring a lawsuit, and "person" includes a "corporation."  This would, therefore, include business competitors such as *Rani*.

 In support of its argument, Golden Star relies on two cases: *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011), and *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 891–94 (S.D. Ohio Mar. 3, 1999). As a preliminary matter, this court is "not bound by the decision of another district court."  *United States v. Johnson*, 34 F. Supp. 2d 535, 538 n.3 (E.D. Mich. 1998). Regardless, the court finds the cases unpersuasive on the merits.

First, *Haremza* dealt with the Oklahoma Consumer Protection Act ("OCPA")—not the MCPA.  Furthermore, as part of its reasoning for denying the plaintiff standing under the OCPA, it analogized to the MCPA and declined to adopt the analysis in *Labatt*.  Instead, it quotes *Watkins* for the proposition that the majority of courts have found that the MCPA does not create a private cause of

action for business competitors.  797 F. Supp. 2d at 1264.  The case, however, is

unhelpful because it did not provide any reasons for declining to adopt the

interpretation in *Labatt*.

Second, in *Watkins*, the court held that the plaintiff, Watkins & Son Pet

Supplies, lacked standing as a competitor to sue under the MCPA.  107 F. Supp. 2d

at 891–94.  In doing so, it believed that the "majority of cases" had held that

competitors lack standing under the MCPA.  According to the court, "[a]lthough

the MCPA uses the term 'person' to describe both potential plaintiffs and

defendants, the plaintiff must still suffer an injury as contemplated by the statute,

namely an injury from a consumer transaction." *Id.* at 893.  And it highlighted that

"[a] corporation is unlikely to suffer the type of injury that the MCPA is intended

to remedy," citing *Robertson v. State Farm Fire and Cas. Co.*, 890 F. Supp. 671

(E.D. Mich. 1995).

*Robertson* is useful here because it critiqued some of the reasoning in

*Labatt*.  In *Robertson*, the plaintiff farmer, alleged a violation of the MCPA for

misrepresentations regarding the purchase of an insurance policy on his barn.  890

F. Supp. at 672–73.  The defendant argued that "irrespective of whether the Act

applies to insurance transactions generally, it does not apply, by its own terms,

unless the 'methods, acts and practices' complained of involve the sale of 'goods,

property, or service primarily for personal, family or household purposes.'" *Id.*

678.  In response, plaintiffs relied, in part, on *Labatt*.  *Id.*  Relying on the MCPA's definition of "trade or commerce," the court agreed with the defendant that the plaintiffs could not sue under the MCPA because the purchase of the policy as a whole was not sought "primarily for personal, family, or household purposes."  *Id* at 681 (quoting Mich. Comp. Laws § 445.902(g)).

In distinguishing *Labatt*, the court first highlighted that "the issue in *Labatt* was limited to whether a business competitor had standing to sue under the MCPA."  *Id.* at 678.  Because the "plaintiff farmer [was] clearly not a business competitor with the defendant insurer, *Labatt* has no obvious application."  *Id.*  However, the court also noted, in dicta, that "[e]ven if *Labatt* did apply, . . . the narrowing of the issue in *Labatt* was misdirected."  *Id.*  "Assuming a business competitor could have 'standing' as the court in *Labatt* held, the competitor would still have to show—as would all other plaintiffs—that the goods or property bought (or services procured) were 'primarily for personal, family or household purposes.'"  *Id.* at 678–79.  The court believed that these "two issues are complementary and not mutually exclusive."  *Id.* at 679.

Thus, the caselaw suggests the existence of some confusion among courts as to what "standing" really means under the MCPA.  As *Robertson* explains, even if a competitor may sue under the MCPA's definition of "person," it may still have to demonstrate that the transaction at issue was "primarily for personal, family or

household purposes."  To the extent by "standing," Golden Star means to argue that the transaction at issue here is not primarily for personal, family, or household purposes, the court declines to address it because Golden Star has failed to make this argument in any useful detail.  Again, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson*, 125 F.3d at 995–96.

Given the plain meaning of "person" permits a business competitor to sue, the court will, at this stage, permit Rani to proceed with claims.  For these reasons, Golden Star's Motion to Dismiss Count III is **DENIED**.

### E.    Tortious Interference

Rani alleges a claim for tortious interference with its business relationship with ZB.  (ECF No. 34, PageID.228–29).  According to Rani, Golden Star interfered by depriving it of its expectancy to maximize sales through its relationship with ZB.  (ECF No. 36, PageID.306).

"Under Michigan law, a tortious interference claim 'requires proof of (1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff.'" *Auburn Sales, Inc. v. Cypros Trading &*

*Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (quoting *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010)).

Golden Star argues that Rani has failed to state a claim for tortious interference for two reasons. First, it argues that Rani has not alleged "an expected business relationship that Golden Star knowingly and wrongfully interrupted." (ECF No. 35, PageID.275). Instead, according to Golden Star, "Rani is still very much in [a] relationship with ZB, despite Golden Star's alleged actions." (*Id.*) Second, Golden Star argues that Rani has not alleged that Golden Star acted with an improper purpose because "engaging in competition in the marketplace" is not improper conduct for purposes of tortious interference. (*Id.* at PageID.275–76).

The court agrees with Golden Star's first argument: Rani has not alleged that Golden Star induced or caused a breach or termination of a business relationship with ZB. While it is clear that Rani does have a formal business relationship with ZB, it has provided no facts suggesting they have ended their relationship. In response, Rani and ZB suggest that Rani has been deprived of "certain expectations regarding the sales associated with ZB's distribution of the RANI products in the United States." (ECF No. 36, PageID.306). In other words, they argue that the business expectancy is in the sales from the relationship—not the relationship itself. But the expectancy that a tortious interference claim protects is not the expectancy of profits from the relationship; it is the expectancy of the

relationship itself.  *See, e.g.*, *Lucas v. Monroe Cnty.*, 203 F.3d 964, 979 (6th Cir. 2000) ("'The [business relationship or expectancy of a relationship] must be a reasonable likelihood or a probability, not mere wishful thinking.'  To demonstrate such a realistic expectation, Plaintiffs must prove an anticipated business relationship with an identifiable class of third parties." (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348 (1984))).  And Rani has failed to provide cases that support protecting an expectancy in the profits from a relationship. Therefore, the court **DISMISSES** Count IV of Rani's Amended Counterclaims.

## IV.    CONCLUSION

For these reasons, Golden Star's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  Furthermore, Golden Star's Motion for Judgment on the Pleadings is **DENIED**.  Count IV of Rani's Amended Counterclaims is **DISMISSED**.

**IT IS SO ORDERED**.

Date: March 31, 2021                          s/Stephanie Dawkins Davis
                                                        Stephanie Dawkins Davis
                                                        United States District Judge